626 So.2d 571 (1993)
Alice Faye Pullig Tynes MITCHELL, Plaintiff/Defendant in Rule/Appellee,
v.
Harold M. MITCHELL, Defendant/Plaintiff in Rule/Appellant.
No. 92-1461.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Writ Denied January 28, 1994.
Fred S. Gahagan, Natchitoches, for Alice Fay Pullig Tynes Mitchell.
Robert C. Thomas, Natchitoches, for Harold M. Mitchell.
Before DOMENGEAUX, C.J., and GUIDRY, KNOLL, COOKS and WOODARD, JJ.
DOMENGEAUX, Chief Judge.
The issues presented by this appeal are whether the trial court erred in reducing, rather than terminating, an award of permanent alimony and, alternatively, whether the trial judge should have ordered a greater reduction.
Harold Mitchell and Alice Tynes Mitchell were married in 1982. The marriage lasted approximately 14 months and produced no *572 children. In the judgment of divorce rendered November 12, 1984, Harold was ordered to pay Alice $200.00 per month in permanent alimony.
On April 22, 1992, Harold filed this rule to terminate or to reduce alimony, alleging that various physical ailments have produced a drastic reduction in his income.[1] After trial on the rule, the trial judge ordered that alimony payments be reduced from $200.00 to $150.00 per month. Only Harold has appealed this ruling.
Harold was employed for approximately 20 years as a school bus driver for the Vernon Parish School Board. When this rule was tried, Harold was not working and was awaiting his disability retirement, which he expected to become effective within two or three months. His salary while working full time was $970.00 per month. His anticipated disability benefits were $550.00 per month, minus $138.00 for hospitalization insurance. (The record does not reflect if Harold was paying his insurance premiums while he was working full time.) Since his divorce from Alice, Harold had remarried, and his current wife works part time as a beauty operator.
Harold's disability retirement was apparently not unexpected; according to documents in the record, his health problems had existed since 1986 and had been affecting his job for approximately one year. Yet, six months before trial on this rule, Harold cashed in $40,000.00 in certificates of deposit, spending $20,000.00 on a new pickup truck and giving $20,000.00 to his grown daughter to prevent her from losing her house. He testified that the payment to his daughter was a gift and not a loan. Harold also had recently spent $14,000.00 that he received in an expropriation proceeding to build a beauty shop for his current wife.
After the divorce from Harold, Alice worked steadily at various full time jobs paying between $4.00 and $4.75 an hour. However, in February of 1992, she was briefly laid off from her job at a grocery store. She was subsequently rehired by the store but only for one or two days a week. To supplement her income, she took on a second job, performing demonstrations of new products on a sporadic basis. Her checks from this employment did not include deductions for income and social security taxes, and Alice was responsible for paying for her own product samples. Her income at the time of the rule was shown to be between $62.00 and $65.00 per week. Alice also had approximately $15,000.00 in certificates of deposit that were listed in her name and in the name of her mentally retarded son born of a previous marriage. Alice explained that this money was awarded to her in her first divorce for the educational needs of her son. These certificates of deposit were in existence when alimony was initially ordered in 1984.
Alimony after divorce (permanent alimony) is available when a spouse has not been at fault and has not sufficient means for support. La.C.C. art. 112A.(1). La.C.C. art. 112A.(2) provides that in determining the entitlement and amount of alimony after divorce, the court shall consider the following factors:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
A party seeking to alter an alimony award must show a change in circumstances of either party from the time of the award to the time of the alimony rule. Moreau v. Moreau, 553 So.2d 1064 (La.App. 3d Cir. 1989). Permanent periodic alimony shall be *573 revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage. La.C.C. art. 112A.(4).
The trial judge found that Harold's decreased income due to his retirement warranted a modification in the alimony award but not a termination. After considering the income, assets and earning capacities of the parties, as mandated by La.C.C. art. 112, we find no abuse of discretion in the trial court's decision to continue alimony payments and in the amount of the reduction ordered.
Harold's retirement did produce a reduction in his income. However, it has been held that voluntary retirement alone will not result in a termination of alimony payments to a spouse whose needs have remained the same. Huber v. Huber, 527 So.2d 382 (La. App. 4th Cir.1988), writ denied, 532 So.2d 768 (La.1988). In the instant case, Alice's needs have not remained the same; they have increased because of her involuntary reduction in income. Until 1992, Alice had been steadily employed at jobs paying only slightly over minimum wage. There has been no showing that Alice has been voluntarily underemployed. When her hours of employment were drastically decreased at one job, she sought to supplement her reduced income by taking on a second job. Despite this effort, her income at the time of the rule was only $256.00 per month.
When we consider the other assets of the parties, we note that Harold disposed of approximately $54,000.00 in cash shortly before his retirement on a pickup truck, on a gift to his major, married daughter and on a beauty shop for his current wife. His current wife also works, contributing to their household expenses. Alice has $15,000.00 in certificates of deposit, but those funds are set aside for the education of her mentally retarded son and were considered by the court when alimony was originally fixed in 1984. We find that Alice has met her burden of proving that she is in necessitous circumstances.
In his brief, Harold seems to argue that a termination of alimony is warranted solely because the marriage was of short duration and produced no children. Those conditions could be considered as "any other circumstances that the court deems relevant" under La.C.C. art. 112A.(2)(g). However, Article 112 also mandates that courts consider those factors specifically enumerated, such as the income, assets and earning capacity of the parties. On appeal, our responsibility is to determine if the trial court abused its discretion in its application of Article 112.
The fact that the marriage was short lived and childless is not sufficient cause, standing alone, to terminate alimony, as Harold argues. We know of no law or jurisprudence, and none has been suggested to us, to substantiate Harold's position. The termination of Harold's alimentary obligation must be done within our legal frame work. Given the facts presented, we cannot disagree with the trial judge's conclusion that Harold failed to show legal grounds to completely discontinue alimony. We find no abuse of discretion in the continuation of alimony to a spouse who has demonstrated that she is in necessitous circumstances, particularly when the payor spouse imprudently disposed of substantial liquid assets shortly before his anticipated retirement. To rule in Harold's favor would require us to depart from the relevant statutory and jurisprudential authorities and from the appropriate standard of appellate review. If our current statutory scheme for the payment of alimony is to be changed, then its revision is appropriately left to the legislature, not this forum.
For the above reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
COOKS, J., dissents and assigns written reasons.
KNOLL, J., dissents for reasons assigned by COOKS, J.
COOKS, Judge, dissenting.
The parties were married in March of 1982. Ms. Tynes left the matrimonial domicile in July of 1983. The judgment of divorce was rendered on November 12, 1984. The judgment of divorce awarded Ms. Tynes $200.00 per month in permanent alimony. Mr. Mitchell filed this rule to terminate or *574 reduce alimony on April 22, 1992.[1] The trial court found a change in circumstances and reduced the alimony payments to $150.00 per month. Mr. Mitchell appeals alleging the trial court should have terminated his obligation to pay alimony to his former wife.
Mr. Mitchell urges the trial court was clearly wrong in its refusal to consider the following facts, in addition to his deteriorating health and medical retirement: the marriage was entered into while both were middle-aged adults, lasted slightly more than one (1) year, produced no children, had no long term impact on Ms. Tynes' ability to support herself and that over the past nine (9) years Mr. Mitchell has paid over $20,000.00 in alimony to his former wife.
Louisiana Civil Code article 112 provides, in pertinent part:
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant. (Emphasis Added)
The majority relied on an overly restrictive interpretation of the factors listed in Louisiana Civil Code article 112. These factors are to be considered not only at the time of the initial fixing of alimony but also at any subsequent modification or termination. Green v. Green, 432 So.2d 959 (La.App. 4th Cir.1983). The trial court found Mr. Mitchell's retirement and disability constituted a "change of circumstances." However, the trial judge felt compelled to only reduce the original award from $200.00 to $150.00 stating in his oral reasons: "[Mr. Mitchell] married this lady and they got a divorce and he owes alimony." Continuing the judge added "I suppose the easiest thing for Mr. Mitchell to do is find the ex-Mrs. Tynes a new husband and they get married and that would be the end of that." The trial court's reasoning that Ms. Tynes is entitled to lifetime support from Mr. Mitchell without showing continuous necessitous circumstances measured against Mr. Mitchell's deteriorating health and diminishing earning capacity is improper.
The majority seems to fault Mr. Mitchell for buying a new pick-up truck and loaning his daughter funds to save her home. They also refer to Mr. Mitchell's expenditure of sums received from the State resulting from the expropriation of a portion of his property. The law does not require Mr. Mitchell to slowly suffer complete depletion of his assets to pay alimony to his ex-wife.
The record reflects both parties own property. Mr. Mitchell owned a home and acreage burdened by a $7,500.00 mortgage incurred for repairs occasioned by termite infestation. Mrs. Tynes owns a home and acreage unburdened by any obligation. Her 1991 income tax return showed she received wages of $7,972.00, plus $1,400.00 in interest income. She has two (2) separate certificate of deposits listed as follows: Alice Faye Tynes or Barry J. Tynes. During questioning at the 1984 hearing, she admitted half of the sums deposited belonged to her. The other half allegedly belongs to her "retarded son." Curiously, the deposits, totalling in excess of $15,000.00, have remained under the exclusive control of Mrs. Tynes who receives the interest income as listed on her tax returns filed in the succeeding years. Recently, she stated the funds still were being maintained for the education of her son, age 24, who she acknowledged was living in Colorado with his natural father in a publicly assisted housing complex. Her personal *575 checking account, at the time of this hearing, showed the following balances: 3/31/92 $13,987.47; 4/22/92$33,587.47; 4/30/92 $2,299.79. In fact, through the years, Mrs. Tynes always has maintained a substantial balance in this account. When questioned about a recent $1,300.00 deposit to the account, she stated this was a loan taken from the account of her handicapped brother, residing in a nursing home, to pay her Sear's bill because the interest rate had increased. Mrs. Tynes further admitted she has complete control over the other accounts, including one allegedly for the use of her handicapped brother, and another left by her deceased mother.
Mrs. Tynes worked as a hospital clerk and a store cashier prior to and after her divorce from Mr. Mitchell, a marriage which lasted only one year. Her income has been steady and consistent throughout this period, except for brief layoffs or voluntary separations. During her last steady employment, as a cashier, for Brookshire Grocery Company she earned $7,977.22 in 1991. However, prior to this reduction rule, she claims her hours were reduced to 8 hours and later increased to 16 hours. She also worked for Rosemary and Associates, Inc., selling beauty supplies at her leisure. The last stub she received from this company shows she netted $104.23 for that week. Mrs. Tynes did not present any evidence to show that she is unable to earn wages greater than she is currently receiving, or that she suffers from any medical abnormality that prevents her from earning wages equal to her former earning capacity.
The record indicates Mr. Mitchell suffers from the following medical problems: rheumatoid arthritis; phlebitis, neuritis, osteoarthritis, osteoporosis, stable seizure disorder and peptic ulcer disease. He suffers from deep vein thrombosis in both legs and had hip replacement surgery in 1985. Mr. Mitchell's medical condition and reduced earning capacity warrant cessation of his alimony obligations to Mrs. Tynes. She does not suffer from similar medical disabilities and she is not earning wages equal to her full potential. She is not in necessitous circumstances. Mr. Mitchell's failing health and medical retirement was not the result of any voluntary action on his part. The "aging process" is a condition we all must face. I am sure if we could voluntarily prevent this natural inevitability, none of us would hesitate to do so.
NOTES
[1] Appellant previously sought unsuccessfully to terminate the awarded alimony. The Louisiana Supreme Court, by writ action, ultimately precluded him from attacking the award because he failed to appeal it. See Mitchell v. Mitchell, 541 So.2d 831 (La.1989).
[1] Mr. Mitchell previously attempted to terminate the alimony award on different grounds. See Mitchell v. Mitchell, 539 So.2d 839 (La.App. 3rd Cir.1989) and Mitchell v. Mitchell, 541 So.2d 831 (La.1989).